Please rise. Illinois Public Courts Second Division is now in session. The Honorable Justice P. Scott-Mill is presiding. Good morning and please be seated. Good morning, Madam Clerk. Would you please call the first case? 14-3002, Katie Murillo v. City of Chicago I'd like the attorneys representing the parties to step up to the podium. I'd like the appellate to go first. I want you to state your name, sir. Tell me who you represent and approximately how long your argument will take. Good morning. Good morning, Your Honor. Jonathan Beyer, representing the appellate, City of Chicago. I believe I'll need approximately 10 minutes for argument and I would prefer to reserve 5 for any rebuttal that may be necessary. Very good, Mr. Beyer. Good morning, Counsel. Good morning, Your Honor. My name is Christopher Wilmes. I represent the appellee, Katia Murillo. I would request 15 minutes at the most for my argument. Very good. Mr. Beyer, why don't you proceed with your argument? Thank you. Good morning, and may it please the Court. This Court should reverse the Circuit Court's grant of summary judgment for Ms. Murillo. In granting summary judgment, the Circuit Court relied on a broad per se rule that any reliance on the information contained in a police arrest report when making an employment decision is automatically a violation of the Illinois Human Rights Act. So complying with the statute is violating the per se rule, Counsel? That's how the Circuit Court ruled here. It ruled that. But that's your interpretation of how they ruled. But explain to me how following that Human Rights Act is a per se violation or a per se following the rule? That's difficult to understand, Your Honor. I'm more than glad to try. As the Circuit Court saw things, and as it relied specifically on the Illinois Human Rights Commission's decision in Johnson, any consideration of the information in the arrest report, whatever that information may be, however detailed that report may be, however without detail that report may be, is a violation. According to the Human Rights Commission, it's a violation because officers prepare arrest reports when making arrests, and therefore it's the exact same thing as an arrest. The Human Rights Commission identified nothing in them. It's coterminous with an arrest. Well, there will hopefully be an arrest report at the same time as an arrest, but that doesn't tie into any of the plain language of the statute. We would hope that there would be an arrest report when an arrest is made, but nowhere in the statute, nowhere in the plain language of the statute, does the statute create an exemption for information that typically accompanies an arrest. Let's look at this particular case. You're talking really as a general proposition, but when you look at this particular case, for example, with regard to the charge that she was interfered with the police officers, what did she do? Explain to me what was there that would explain what she did with the police officers. Actually, yes, there is, Your Honor. I believe you're referring to the cooperation ordinance. It's a slightly strange title for the ordinance, given the substance of that ordinance, but that substance explains how what she did ties into that, how it violates that ordinance. Under the cooperation ordinance, all licensed liquor establishments, which there's no doubt that the Friendly Tap was such an establishment. It was a tavern or a bar, however you want to phrase it. All licensed individuals and their employees are prohibited from allowing or failing to report illegal activity on the premises. If a bartender is allowing people to sell drugs, whether behind the bar or in the premises, that's a violation. So how did you know that she was aware of the drug? From the information we have in that report. Given the information in the report, the officers stepped into the, as they relayed in that report, they stepped into the bar and literally hanging out of the ceiling was a bag full of drugs containing, I believe, 44 small bags, individually packaged, the kind you'd expect to typically see for distribution. Did anybody say anything whatsoever about whether or not she had possession of a narcotic? There was nothing that said in those terms, but as we know in our brief, constructive possession in these sort of circumstances, she would have constructive possession because she had control of those premises. How big was the room? How many people were in it? There are no details on that. Did they know each other? Was it a convention? What was it? Sorry, what was that? What was it, a convention? What was it? A convention. Were there people in there, strangers, that she didn't know or didn't know? There's nothing there in the arrest report, but one would presume that if there had been observed a number of people, that that would have been noted. When you look at the report, you'll see that there are no witnesses listed in that report. The only individual that was seen was the individual who was noted in that report, exiting the bar with one of those small bags of drugs, matching what was found in the larger bag. Someone evidently jumped out before this happened and threw the drugs on the ground, right? Someone walked out when the police approached him. What does that have to do with this woman? Well, it has to do with the overall circumstances of the arrest. It explains what brought the officers in there. They already knew, as they explained in the report, that that terrible... Wouldn't that arrest everybody then? No, no. That would certainly not be the circumstances. But under these circumstances, a reasonable person, a reasonable officer, could believe that Ms. Murillo was involved in drug activity. Based on what? Based on drugs hanging out in open view. Did she hang the drugs in the rafter? Did she hang the drugs above the rafter? The officers couldn't have observed that, but they could reasonably presume that she would have not... How could they do that? Seeing drugs hanging from the ceiling? How? Who put it there? That would be Ms. Murillo's knowledge, but... Why? How? Because she was in control of that bar at the time that this incident occurred. She was a bartender, right? Correct. And that puts all these drugs in her hands based upon what you're telling us? Under the doctrine of constructive possession, as has been recognized by the Illinois Supreme Court, she had the capacity... In this case, could it be recognized? And on what basis? On the basis that these drugs were hanging in plain view. These officers did not have to conduct a searching investigation of the bar. They specifically observed them hanging out of the ceiling. And the idea that Ms. Murillo was unaware of drugs hanging in plain view in the bar... How do you come to that conclusion? What if you just walk into a room and all of a sudden a police officer comes in and says, you know, I don't know you and I don't know the people in here, but I see a bag of cocaine here. You're under arrest. That might be a different situation, but that's not the situation. Is this the same situation? It is not, because Ms. Murillo was the bartender running that bar at the time, and there's no dispute. Are you going back to a prior conviction that she had? No, I am unaware of a prior conviction that she had, actually, based on the... You should know the record for that. Sorry? You should know the record in relation to that. I've seen no conviction. I saw that she was charged with an immigration violation, but that did not go anywhere. No, she was... She was... There was a sua sponte discharge based on lack of probable cause for an earlier charge. She was never convicted of any crime involving narcotics. Counsel, what significance should we attach to the fact that in a preliminary hearing, the judge made a finding of no probable cause? That finding is completely irrelevant, both because it's not binding on the city. The city, under basic principles of claim preclusion, issue preclusion, what have you, the city would not be bound by that, and also... But a decision was not made to go forward and go directly and indict her, correct? She was... Right. She was taken to a probable cause hearing, which I believe was mandatory given the amount of drugs. But it went no further than that, correct? Correct. She never confessed to possessing the drugs, correct? The closest that I saw on the record here was Mr. Sergeant Gahn believed that something he reviewed indicated that she had knowledge. It wasn't clear... She had... That she had knowledge of the drugs. Did she confess to having knowledge? That something was said by Ms. Murillo, admitting knowledge of the drugs, but that document is not on the record. Was it indicated in the arrest report? That was not indicated in the arrest report, no. So where did we get this information from? Does it go on the record or is it in the record? If so, tell me where we can find it. It's in... That mention is in Sergeant Gahn's testimony. I can... It does not... The document that he referred to does not appear in the record. That might have been a misstatement on his part. All of his information was obtained from the arrest report. From the arrest report and the narrative provided by the officers in that arrest report. So don't we have a rule of evidence that you can't testify unless you have personal knowledge about what's going on? Is that correct? Personal knowledge? Well, that would involve a person's personal knowledge about the events, but that's not... So he witnessed the events. He didn't witness anything, did he? No, he read the police report. That's the only information he had. Secondhand information. That's correct, but there's nothing wrong with that. Officers can... There's nothing wrong with it? There's not. Secondhand information is admissible? There's not. Secondhand information is admissible in court? It is admissible when it's for certain purposes. For instance, in establishing probable cause, an officer can use information provided to him by third parties. Very good point. And they didn't have enough information to get a probable cause finding in this case. That is incorrect. We got a probable cause finding? No, the circuit court ruled that there was no probable cause, but that ruling is completely indefensible on the record presented to the circuit court. When the testimony was presented to the circuit court on the probable cause hearing, the circuit court was informed that the drugs were not only found in the bar stashed away in some obscure corner. The officer specifically testified, I came in the bar, the drugs were hanging two feet above Murillo's head, hanging out of the rack, the drafter in plain view. And to say that there was no probable cause to believe that Ms. Murillo had possession of the drugs that were hanging right here. So you're doing nothing more than ten years later questioning the finding of that trial court judge, correct? We had no intention of... I'm asking you a specific question. You're questioning a finding ten years later, correct? I believe that finding is questionable, correct. That was not the basis of our... It may be, but it was not appealed. Is that correct? That's correct, but it wasn't for the cities to appeal. What other evidence, other than the arrest report, do you have that Ms. Murillo committed an offense? There is that arrest report, but that's all that's required by the statute. Wait, wait, wait. The statute says you can't use the fact of an arrest. That's correct. You can't use it. Then all they're using is the fact of the arrest. That is incorrect. In fact, as the term fact of an arrest has been construed in the criminal context, in criminal cases when a person's actual liberty turns on whether the fact of an arrest is being considered, when courts making sentencing decisions decide how long a person will be in jail, not merely getting security clearance to work in an evidence room, but to go to jail, the federal courts have made quite clear that the fact of an arrest is limited to narrowly a few things, the mere fact that the person was or was not arrested, the identity of the charge, and the disposition of that charge. That is all that is encompassed in the standard definition of the fact of an arrest. But this isn't what we're talking about here that would lead us to follow, that the legislature had in mind what you're talking about. I mean, we're not talking about sentencing here, are we? We're not talking about sentencing. So all we're talking about is the effect of an arrest. That's correct. And all this officer had beforehand. That was not the officer. The fact of the arrest, the criminal history record, and he couldn't remember anything else. Those are the only documents he had. He said he always kept his file, and if it wasn't in the file, then we can assume he didn't have it. No, that's not correct. He specifically said that he reviewed it. He could relay the information from that report, despite not having stated he hadn't reviewed the report even for his deposition. He could state from memory what was in that report. And he explained, he said specifically, if it isn't in the file now, then that means there was basically a filing error. He said, I reviewed it. It means that whatever happened afterward, it didn't catch up with the file. But he stated it. He doesn't know that. He could only guess because he wasn't involved in, you know, he's not a filing clerk. He's not in charge of that. He's the officer reviewing these documents. There's nothing else presented. It doesn't matter. The fact is, in this case, nothing was presented other than the fact of the arrest. No, that is not correct. That is not correct. What is correct? The fact of the arrest would have been a blank report saying, arrested for identifying the crime. That's your definition? That's the standard definition of a fact of an arrest. Where do I find that? That would be in the numerous cases we cite that interpret what the fact of an arrest is for the criminal sentencing context. This is an issue of first impression in this court, what constitutes a fact of an arrest. And giving further substance to that narrow definition, first is the secondary clause of section 2103, which makes clear that any other information indicating the conduct can be considered. And information in an arrest report is undoubtedly such other information. There's nothing in that statute or language that says information commonly associated with an arrest. You're not citing the relevant words for section B. It's what indicates a person actually engaged. So what indicated that she actually engaged in non-cooperation and that she knew about those crimes? Indicate, as we explain, is a standard, broad term that doesn't require a heightened burden of proof. It certainly doesn't require proof beyond a reasonable doubt. That would be an incredible burden. Everybody's suggesting it requires proof beyond a reasonable doubt. We're not suggesting it. Let's say we're not suggesting it. Okay. Ms. Murillo has made a central point. Let's say that that's not the standard. As we note, the common understanding in employment law in general, in every other context, particularly relevant in Title VII racial discrimination cases, is information sufficient that could give a reasonable person a belief in wrongdoing, whether it be criminal or otherwise, depending on the context. Criminal wrongdoing is irrelevant in several contexts. And that seems to be all of the legislature intended here at absolute most. So it doesn't mean probable cause, no probable cause. It was summarily dismissed. But apparently somehow this individual, looking at the same information that was available previously, came to the conclusion that she was actually engaged in the conduct? That it indicated she was actually engaged. That's not a high burden. That's not expecting. To say otherwise would have employers conducting detailed criminal investigations that they don't have any experience in doing, evaluating credibility when they don't. Do they have to retain counsel? Do they have to hire a private investigator? How does an employer do much more than review the information before them? And to set police reports aside denies employers of a contemporaneously prepared source of that information. That the officer that was there, that spoke to the witnesses, witnesses who may be unwilling, may be afraid, may have their own reasons, may have passed away, whatever, may not be available. An officer at that moment wrote down his best recollection of what he saw and what happened and what led to that arrest. So what information other than that, that the officer wrote down, do we have that the sergeant obtained or used other information than the arrest report? Other information. Forget the arrest report. I want other information. Information other than the arrest report? He looked at, I believe, an FBI report and things of that. An FBI report? I don't want to come over that. He submitted, as Sgt. Gahn explained. Fingerprints to FBI. Fingerprints. I believe the FBI report is actually what lists the immigration charge that looks like it. It has nothing to do with these charges. Correct. Let's get to the subject matter, and I'm trying to find out from you, other than the arrest report, the criminal history, what did he obtain or use other information that she actually engaged in the conduct? The only other information other than the fact of arrest was the narrative in the arrest report, case report, abstract. The distinctions seem more technical than substantive between those documents. It seems like they just say they're different words for essentially the same substance. So I'm not trying to inflate it into more than it was. But that was all that he, the entire scope of things that would contain what we would say was other information. The other documents, I think the FBI report, the Illinois state report, just listed names of charges. And he made quite clear that that was irrelevant to his determination, that he had dealt with people who had been arrested before and did not deny them security clearance on that basis. He made undisputed testimony that he relied on the character and conduct that he saw from the documentation, not knowing what charge was written down. We don't dispute that just looking at the name of a charge and the fact a person was arrested, that is the paradigmatic fact of an arrest. He said what he relied on was the arrest report, period. The arrest report. That was where the factual substance was, what the arresting officers wrote happened on the day of the arrest. Did he check with the arresting officer to see what he knew about this arrest? He could not recall. He just factually could not recall. It had been some time since he had done that. But he explained that one difficulty was, particularly in a case of this age, was that speaking to arresting officers that they often wouldn't remember, just if it wasn't remarkable in its own right. Since you mentioned age, how old was this arrest? Approximately 10 years. I'm not sure exactly how old was when Murillo was with the security clinics. You cannot even use a conviction after 10 years. Why should we permit the city to come in here and complain about an arrest that's 10 years old? Explain that. Because nothing in the statute prohibits it. And the statute is an exception to the general, as are all of the employment provisions of both state and federal law, are exceptions to basic principles of employment law, the background principles of employment law, that allow employers to make decisions. We're all, I for certain am an at-will employee. My employer doesn't have to offer any reason to fire me. Let's just get back to this case. So your position is that that police report contains information which indicates that a person here in Miss Murillo actually engaged in the conduct for which she was arrested. That's correct. That's your position. That is correct. Do you have anything further? I have nothing further on that point, except to just note that as this court's questions have leaned, this court seems to be looking at the substance of the arrest report itself, what was said in that arrest report. And that at core is what we urge. The circuit court here didn't even mention, or maybe not mention, but didn't even make anything, didn't make nothing of what was in that arrest report. It said whatever that arrest report had, if this arrest report had 15 witnesses that all said, yeah, Murillo was handing us drugs, she does it all the time, or whatever you might have. But that was not in the report. That was not. But the point is the circuit court relied on a per se rule. So whatever this court may think of, whether a person can rely on that information in the arrest report, we would still urge this court to reject the per se rule adopted by the circuit court. Whether or not this court thinks this arrest report was sufficient, please don't condemn all arrest reports to irrelevance in this context. Any more questions? I take it you're asking the court to reverse? Reverse and either remand or remand for a trial or remand with instructions. Thank you. Thank you. Excuse me, counsel. There was a remand, there was discussion of fees. Are you including that or not? Sorry, Your Honor. There was a discussion of fees and about the question about remanding those. You're not going to address that now? No, we believe unless this court has any questions, of course, we would just ask that remand. You stand on your brief. We stand on our brief and ask that you just remand for just an explanation of what the circuit court was thinking. Let me ask a question on that. Is it your position that the 2013 fees, is that on appeal? Is that before us? Are you accepting that whatever happens on the fees, the use of the 2013 fees, which is what they presented to the court, is appropriate? We are disputing that that's appropriate, but because we don't even have a measure of, you know, since fees are a combination of rate times time, that it would be difficult to address how those even affected. So we obviously have to show harm, that we were harmed by what the circuit court did, that setting the fees using a certain date had some sort of meaningful effect, negative effect towards us, and we can always speculate as to that. We don't know what hours it allowed, what hours it didn't. Forget the hours. I'm just talking about the rates. Right. So are you contesting, on this appeal, are you contesting the rates? We are challenging the rates to the extent that it's possible on this record. We are troubled by the idea that an individual exercising billing judgment would charge a partner's rate for work done as an associate without any explanation why that rate was appropriate. And there's none here, and none has been offered, except that the plaintiff's firm issued lockstep increases, but the Illinois Human Rights Commission has rejected that as an appropriate measure of rates. What rates do you think would be appropriate? The historical rates. So the trial which took place in 2014, 2014 rates, 2015 rates for whatever work was done there, for the appeal, 2016 rates? Ms. Muriel has never requested that those rates, never has claimed that those rates were appropriate. But if you're saying that we should consider that, I mean, you're appealing that, then that opens that door. Well, and that's why, coming back to my initial point on this issue, that we don't know how that affected things. Maybe it was a wash based on what rates were used at the time. You can't have it both ways. You can't say, well, I don't know. But, I mean, so if you're saying that that's on the table and we can consider whether there was enough support for the 2013 rates in the record, are you saying, no, the rates, that should all go back to the court? That should all go back to the court. Thank you. Who and what was Triad? Who is what and what is Triad? Triad was an independent contractor that assumed responsibility for basic maintenance services at various city buildings, including certain city police stations. They were actually Ms. Maria's employer. The city was never her actual employer. She was an employer of the independent contractor, Triad. And they assumed the responsibilities from another independent contractor that was moving out, assumed all the employees of that previous independent contractor. And that's when just the background checks were conducted to ensure that everybody that was working for that contractor had the appropriate security clearance. Did the city encourage Triad to have Ms. Murillo removed from service? No, they did not. The undisputed testimony is that Sergeant Gahn made the security clearance decision, informed the relevant contact person at the Chicago Police Department. He never did an investigation, though. He didn't do any independent investigation. He just reviewed the documents presented. He did an investigation, but he didn't go and interview witnesses or anything like that, if that's what you're referring to. It's not an investigation. Counsel, Mr. Byer, thank you.  Good morning. May it please the Court. The city of Chicago fired Ms. Murillo based on this 10-year-old drug charge that a judge threw out of court because it didn't even meet the standard of probable cause. At the time, Ms. Murillo, ironically, had been working at that First District police station for two years without incident. The city attempts to defend this decision by arguing that it didn't rely on an arrest. It relied instead on an arrest report that states in its entirety, as you've seen, that police walked into a public space where Ms. Murillo was working, found drugs somewhere in the rafters of the bar. The General Assembly enacted the Human Rights Act's arrest record provision precisely to prevent something like this case from happening. The statute was enacted to protect innocent people from losing their jobs just because they were arrested. Why don't you explain to us how she lost her job? It was just pointed out by Mr. Byer that she had worked for the city. They refused to certify her so she could enter the building or failed to give her a security clearance. Exactly what happened? That's right, Judge. This was a matter of quite a bit of contention in the lower court. What happened was Ms. Murillo bounced around between a few different contractors that were cleaning the First District police station. In order to work in the First District police station, the city of Chicago had to give her a security badge that gave her security clearance. So what happened was that in the beginning of 2009, the contractor changed. Pursuant to union rules, Ms. Murillo stayed, but she had to go get a fingerprint-based background check in order to maintain her employment. The next thing she knows, the city of Chicago says, we're not going to let you work here anymore. Because Triad had nowhere else to place her, it testified that it had no decision but to end her employment. So the underlying claim is that under the Human Rights Act, the city of Chicago forced or compelled Triad to fire her based on an arrest. Are you contending there should be a per se rule? I'm sorry? Are you contending there should be a per se rule? A per se rule? With regard to how they... To arrest reports? Right. Yes, Your Honor, we are. Explain how that rule would work. The rule would say that in order to satisfy subsection B, it must point to some other piece of reliable evidence outside of an arrest report that indicates that it makes it more likely than not that the person actually engaged in criminal conduct. Our argument is that subsection B is intended to be a narrow exception to the general rule, which is arrests are supposed to be off the table when making employment decisions. And if the city's rule were adopted, what we would have is a situation where there would be no more arrest record liability because almost every single instance, this case aside, an arrest report includes some allegation of criminal conduct precisely because the police need to justify their arrest. And so if the city's rule were adopted, an employer that wished to engage in arrest record discrimination would simply order a copy of the arrest report, read the nearly inevitable allegations of criminal conduct, and avoid liability entirely. Counsel, what information is missing from the arrest report in this case? Something titled. According to your opponent, he says the arrest report indicates that Ms. Murillo actually engaged in the conduct for which she was arrested. I just don't understand. Do you disagree? Very much so, Judge. Why? Because there is no, in order to find somebody responsible or to infer that somebody is responsible for drugs found in a public space, there must be more than the fact that drugs were found in that public space. Imagine, for example, if police walked in right now and they found drugs underneath a bench. Counselor mentioned that with regard to facilities such as this, there's a different room. Not a courtroom, but in bars, a person who is a barkeep is responsible for what goes on in that facility. I'm not aware of any criminal rule that says if drugs are found in a bar, you can just haul away all the bartenders in the bar. We don't even know if she was the only bartender. I don't believe that there's any such rule. Perhaps the owner may be fined if they find drugs in the bar. I'm not aware of any rule that says... But in this case, Counsel, the drugs were hanging right above her. That's not true, Judge. Well, first of all, that is not a fact that Sergeant Gahn considered when he made this decision. The only thing he had was the arrest report. This transcript that the city has attached to the Ocala Court Brief for the first time is something that we'd never seen until we came here. Until you came here? Because it wasn't in the lower court's record. That's not a part of the lower court record. The transcript was not part of the lower court record? No, Your Honor. It was never brought up at trial? Never. It was never brought to trial? It was never a summary judgment? Never. Never? Never. The transcript was not a part of the record. You didn't make a motion to strike it, did you? Your Honor, they said you could take judicial notice of it. We disagree with that, but we pointed out in our brief that was not a part of the record. Never was there any part of the transcript. Wasn't there a summary judgment motion made? Pardon me, Your Honor? Wasn't there a summary judgment motion made? Yes, Your Honor. We filed summary judgment. Defendant filed cross motions for summary judgment. Never did the transcript come up. And, of course, never did Sergeant Gahn testify that that transcript was something he considered. So, let's just go to the summary judgment. What did the judge consider in summary judgment? The arrest report. That was it? That's it. There was no testimony. So we should ignore anything that the sergeant says because that wasn't before the judgment? Of course the sergeant's testimony was. The deposition transcript of Sergeant Gahn was in the record along with the case report. However, the transcript of the probable cause hearing, that's what I'm trying to do. I'm sorry if I wasn't clear. I want to make it clear. The testimony in the probable cause hearing was not a part of the record. That was introduced for the first time on appeal. Okay. Of course Sergeant Gahn's deposition testimony was a part of the record. Okay. But this business about two feet above her head, that's for the first time on appeal. And we submit to you that, of course, it's not relevant. It didn't factor into his decision. And so the only thing that was before Sergeant Gahn was his case report. He says in his testimony, quote, I asked him, what was the reason that you denied Ms. Maria Clarence to work at CPD facilities? Answer, based on the fact that there was possession of a controlled substance and a refusal to cooperate with the police in the investigation of the agent of the license. Of course, there's nothing in that case report that talks about Sergeant Gahn not cooperating. And there's nothing to tie her to the drugs in the bar. You know, the idea that anybody that's present in a bar is responsible for the drugs is candidly preposterous. You know, and that's our critical point here. Even if there were a circumstance in which an arrest report can be considered, and we don't think that's consistent with the language of the Act or the Commission's interpretation, this arrest report can't possibly satisfy subsection B. Again, nothing but the fact that there's a bag of drugs in a Northside bar where she's working. No allegation that she knew that the drugs were there. She made no inculpatory statements. She didn't behave suspiciously. She didn't refuse to cooperate. Doesn't say how big the bar was, how many rooms there were, if there were other people present. I submit, again, this is a classic situation for which the arrest record provision was passed. Someone gets caught up in a bogus arrest, and there's nothing tying the person to the crime, and the charges are thrown out at the earliest possible instance. An employer should not be permitted to use that unfounded arrest to render the individual unemployed. Yes, sir. Is it Gon's testimony that Murillo actually had committed these offenses because she had been arrested for them? We're not talking conviction. We're not talking about what? His testimony was that I read the arrest report, and to me that indicated that she engaged in criminal conduct. That was his testimony. So he only made that up? I'm sorry? He made that up out of whole cloth? No, I don't dispute that. He made his decision based on the case report, but I think he made up that there were allegations in there tying her to the drugs. Importantly, he didn't have the arrest report or case report in front of him when he took the deposition, and I think he probably thought there was more in there than it actually turned up. I want to move on, Your Honors, to the attorney's fee issue. Before you do, just one more question. So it's your position that under B, in consideration of the fact of an arrest, the arrest report cannot be considered, and there has to be separate, independent information obtained or used. Correct, Your Honor. That can't have been derivative of, well, I guess it could be derivative, but not solely based on. Correct. Right. In an interview, well, correct, you've stated our rule, our proposed rule. And if I may, I'd like to move on to the issue of attorney's fees, which I also think is important. Parties do agree that the circuit court's attorney's fee ruling cannot stand, but we think it's important from our standpoint that in reversing this ruling, this court should instruct the lower court to reinstate fees at the hourly rates that we requested. We provided the only evidence of an appropriate hourly rate in this case. We provided evidence that Mr. Karsh and Mr. Pierce billed and collected from hourly clients at rates of $445 and $600 per hour. We also provided affidavits from four civil rights and employment lawyers, two of whom testified that they charged similar rates to their hourly clients, and all four of whom testified that these rates were reasonable. In response, the city provided nothing, no evidence, nothing. When there's unrebutted evidence of the rates, the circuit court should have eroded fees at the rates we requested. So are you asking us if we were to affirm on the rates, the rate would be the 2013 rate for all time incurred in this case? Correct. Except I think that we conceded in our reply brief that they could take out some of the time. Some of the time, but I'm just talking about the rates. Right, if the rates, it should be our 2013 rates, and we would seek to get post-judgment interest on those rates for 2013 that were awarded. So if the law says that it can't be based upon, the increase in your rates was more than inflation. They pointed that out. Right, but I think that the commission has made clear that you can do it one of two ways, and frankly the Seventh Circuit has said this too. It's up to the discretion of the circuit court judge when you use historical rates or current rates. You should use one or the other, and there's good reasons for both. We took a middle ground approach. I think a third of the work in this case happened in 2014. We said, look, we don't want to have, we want to make it easier to calculate here what the rates should be. We're going to go for 2013 rates. That way it simplifies everything. We don't have to argue about whether each individual rate in every year is reasonable, rather than let's just pick one rate. We're not going to make it our current rates. We know that could be objectionable. We're going to go back a year to 2013 rates. We thought that that was a reasonable compromise, frankly. Using those rates and the time, not counting any time you might have eliminated in your reply brief, but if you were going to get the maximum rate you requested, my understanding is that was about $300,000? Correct. And you received $199? Correct. So it was about a third less. It was really more than that, because I think it was $330,000. So it was about 40%. So it was a large cut. And let me give you a little bit of background on this case, which is that I started at my firm in 2009 as an associate. I brought this case with me from my previous law firm, which is the Legal Assistance Foundation. I literally didn't look this case up myself. I took all the depositions myself. I defended all the depositions myself. I wrote most of the pleadings myself. But you were by yourself at the deposition. Apparently they had two or more of you. They had two at every deposition, and they had two at practically every court hearing. I did 75% of the work on this case. I don't know how you could locate a case more efficiently than assign one attorney to do 75% of the work. Of course, I brought in other attorneys when I had a tricky issue that I needed to talk about or I didn't have time to meet a deadline, and so I needed an associate or another partner to help me do some drafting. But we did it efficiently. And we've carried this case for almost seven years without getting a dime. We think that we should be paid for all the time we've wasted. What did we do about the time, that is, the particular time entries where the judge cut 40%? So we don't know which entries he cut out. And our position is that this court has the discretion to reinstate the time. We've cited the cases where it's done so before. I understand you may be reluctant to do that. In that event, I guess a remand is in order. But we would ask the court to instruct the circuit court that the default is you keep the time in, especially when 75% of the work was done by a single attorney. If there's no further questions, Your Honor. Are you asking us to remand to have the trial court recompute the attorney's fees? Your Honor, we're asking that this court compute the attorney time up through the post-trial motions. But you do acknowledge the trial court's in a much better position to do that. It may be. Of course, this trial court presided over the trial but didn't preside over any of the pretrial matters. I understand if you're reluctant to do that, we accept the court's decision to remand to the circuit court. Again, we'd ask instruction of the circuit court that it seems unfair to slash 40% of the time on a case that was primarily litigated by one attorney. Any other questions? Thank you, counsel. I'd ask this court to affirm the judgment of the circuit court on the issue of liability, reverse and remand the circuit court's ruling on attorney's fees. Mr. Byer, some brief rebuttal. Thank you, Your Honor. Just a few hopefully quick points, Your Honors. First, the issue here is, again, one of statutory interpretation, and the statute is quite clear. It prohibits reliance on, and I quote, the fact of an arrest. Ms. Murillo's position is that this court should depart from that and impose a per se rule, excluding certain information from consideration that cannot be reconciled with that language. The circuit court here did not even find that the city relied on the fact of an arrest. It found that the city relied on an arrest report and that that was the same thing. But again, there's nothing in the statutory language. In the legislature, if the legislature meant to carve out an exception for police reports, it could have, but it did not. It left that door open. Maybe some arrest reports will be insufficient, but that's a different question. Ms. Murillo confirms in her argument here that she intends this court to impose a per se rule, and that's just unsupportable by the statutory language. And because of that error, because of the error in determining that a per se rule should be imposed, the circuit court should be reversed. Again, this is a motion for summary judgment where all facts and conclusions from those facts are drawn in favor of the city, and the city gets the benefit of the doubt when there's any sort of ambiguity and sort of doubt regarding those facts. Applying that standard here, this court should at very minimum reverse or amend this matter for a new trial for a jury of peers to determine whether Sergeant Gahn relied on the facts of an arrest or whether he relied on other information as allowed by the statute. Well, jury already heard this case. Part of this case didn't. I have to turn this to you. A jury heard this case after summary judgment, but the jury was informed multiple times that liability was effectively already established, that the city had already been found by a court to have violated the Human Rights Act. So the jury had no opportunity. The jury had already been told that decision was off the table as to whether there had been a, what I would say, a core violation. The jury considered it a coercion issue, whether that violation would be used to coerce triad, but there was no consideration of the underlying fact of the arrest consideration here. So is there a particular statute that makes it a crime to be in control of a premises? There is a statute that the city ordinance, the city's cooperation ordinance, I believe that's what Your Honor is referring to, specifically prohibits, as I mentioned in my opening argument, prohibits licensed liquor establishments and their employees from allowing illegal activity on the premises, which undoubtedly possession of a large bag of cocaine, possession or distribution of either one, that's undoubtedly illegal, that's a felony. It also prohibits- But they don't have to know about it. It seems to be in control. Just the fact that somebody is in control of a premises, doesn't know anything about anything in the ceiling, in the floor, hidden under a table, that's a crime. It's a violation of city ordinance. It's a quasi-criminal, I don't know, that's always a tricky determination for city ordinances, but it is a violation of the ordinance. It is a city ordinance, and Ms. Mayer was cited with that offense when she was arrested. The arrest report specifically says, illegal activity on premises, and cites the relevant provision of the Chicago Municipal Code. It's called the cooperation ordinance, again, that's an imprecise title. Do you have a citation to it? A citation for- To the cooperation ordinance. If you can give me one moment, I inadvertently closed my brief to it. That's okay, counsel, go on. It's a municipal code, it's mentioned at least on page 30, I believe, multiple references of our- The reply brief. Of our reply. That's section 4-60-141. Under that ordinance, no employee of a licensed liquor establishment may allow any, and I quote, allow any illegal activity on a licensed premises. Do you have anything further? Just regarding the, sorry, one final point regarding attorney's fees. Again- Before you go, I don't want to interrupt, but I just didn't want to get in the way. You said allow. The word allow is different than just sitting there and being a bargain. So there is a question there. And that question is not, there's nothing in the arrest report that would say whether she allowed it or not. In fact, we know what the trial judge did in the matter when he fell no, or she fell no probable cause. So where is there something that says that she allowed it? Where did the sergeant look to see that she allowed it? That's what the statute says. That's what the ordinance says. Correct. And taking the facts in the light most favorable to the city, again, on review of summary judgment, there was an individual that had immediately before been seen coming out of the premises with a bag of drugs. A larger bag of drugs containing several, 44, I believe, identical small bags of drugs was found inside. A reasonable person could certainly conclude that that bag of drugs hanging on the ceiling, that Maria would have observed someone if that was his drugs, speculating that that was his drugs even. She would have seen and known about him taking that little bag of drugs out. How she could not have seen someone digging around the ceiling taking drugs out is beyond me. So speculation is okay in the way that this is reviewed? We should okay speculation? Is that what you're saying? It's not speculation. You just said it was speculation. It's taking it to respect the fact that a jury has the right to consider the evidence. Whatever. He has to find something. I mean, all he did was the arrest report. Right. And there's nothing wrong with considering that arrest report. Nothing in this statute prohibits him from considering that arrest report. That is a manufactured principle of the Johnson decision, which didn't even address this version of the Human Rights Act, which addressed an old version that was so wildly overbought that the legislature had to step in and fix it. The legislature... Johnson doesn't have much currency now. Sorry, what was that? Johnson doesn't have much currency now. Not even with the Illinois Human Rights Commission. In Sovaldi, they specifically limited that decision. Even though Johnson had brought dicta that purported to interpret the current version, Sovaldi said that was dicta. That case was about the 1992 version of the statute, and we believe Sovaldi, if anything, is controlling, and Sovaldi is entirely consistent with judgment for the city here. Counsel, make your final point. Final point, just on fees again. We're in a difficult position because the circuit court didn't explain its ruling. We don't know what hours were cut and what was allowed. We offer some concerns that we have, and that was our intent in our brief here, to just point out, and as Maria responded, I want everything that I requested, and unable to say what the circuit court allowed and did not allow. We identified some troubling points that we felt were most responsive to that point, but we don't know. We don't know if the circuit court allowed those troubling hours or didn't. It gave a very general description, and that's why we believe that it's best for this court to remand for just an explanation, not for modification of the award, but just for an explanation of what happened so we can evaluate and determine what the circuit court did. And we've got that set out in our brief. Thank you. Thank you, Your Honor. And again, we respectfully request that you reverse the decision of the circuit court. I'd like to compliment the attorneys on their briefs and on their arguments. This matter will be taken under advisement, and this court stands in recess.